# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

FRANK MARTIN ANNUNZIATO, JR.,
    *Plaintiff*,

v.

NANCY A. BERRYHILL,
    *Defendant*.

No. 3:17-cv-00606 (JAM)

## ORDER GRANTING MOTION TO REVERSE
## AND DENYING CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Frank Annunziato, Jr., alleges that he is disabled and cannot work because of depression, liver disease, sleep apnea, type II diabetes, and edema and neuropathy secondary to diabetes. Pursuant to 42 U.S.C. § 405(g), he seeks review of the final decision of defendant Nancy A. Berryhill, Acting Commissioner of Social Security, denying his claim for social security disability insurance benefits. Plaintiff has filed a motion to reverse the decision of the Commissioner, and the Commissioner has filed a motion for judgment on the pleadings. For the reasons explained below, I will grant plaintiff's motion to reverse and deny the Commissioner's motion for judgment on the pleadings.

### BACKGROUND

The Court refers to the transcripts provided by the Commissioner. *See* Doc. #15-1 through Doc. #15-12. Plaintiff filed an application for disability insurance benefits under Title II on August 8, 2014. He alleges a disability onset date of December 10, 2012, and because his earnings record allows for him to remain insured through September 30, 2018, he was required to show that he became disabled on or before that date. Doc. #15-3 at 15. The claim was denied

1

initially on February 17, 2015, and upon reconsideration on May 28, 2015. Plaintiff then timely filed a written demand for an administrative hearing.

Plaintiff appeared and testified before Administrative Law Judge ("ALJ") Ronald J. Thomas on July 28, 2016. Vocational expert Robert T. Paterwic testified at the hearing. On October 26, 2016, the ALJ issued a decision concluding that plaintiff was not disabled within the meaning of the Social Security Act. Doc. #15-3 at 14–25. On February 26, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id.* at 2–5. Plaintiff timely filed this federal action seeking review of the ALJ's decision. *See* Doc. #1.

To qualify as disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and "the impairment must be 'of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015) (quoting 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A)). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country," and "when there is a significant number of jobs (in one or more occupations) having requirements which [a claimant] [is] able to meet with [his] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(a)–(b); *see also Kennedy v. Astrue*, 343 F. App'x 719, 722 (2d Cir. 2009).

To evaluate a claimant's disability, and to determine whether he qualifies for benefits, the agency engages in the following five-step process:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits [his] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed [in the so-called "Listings"] in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform [his] past work. Finally, if the claimant is unable to perform [his] past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122–23 (2d Cir. 2012) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 416.920(a)(4)(i)–(v). In applying this framework, an ALJ may find a claimant to be disabled or not disabled at a particular step and may make a decision without proceeding to the next step. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proving the case at Steps One through Four; at Step Five, the burden shifts to the Commissioner to demonstrate that there is other work that the claimant can perform. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. At Step One, the ALJ determined that plaintiff had not engaged in substantial gainful employment activity since December 9, 2012, the date of the alleged onset of his disability. Doc. #15-3 at 16.

At Step Two, the ALJ concluded that plaintiff suffered from the following severe impairments: diabetes mellitus, neuropathy, and depression. *Id.* at 17. The ALJ further concluded that plaintiff suffered from the following non-severe impairments: obesity, hypertension, liver disease, and sleep apnea. *Ibid.* At Step Three, the ALJ determined that plaintiff did not have an

3

impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Ibid.*

The ALJ next concluded that plaintiff had a residual functional capacity ("RFC") "to perform light work as defined in 20 CFR § 404.1567(b) except that he can occasionally kneel, bend, balance, squat, crawl, and climb; can never use foot controls with his left foot; and can occasionally interact with co-workers and supervisors." *Id.* at 19. In determining plaintiff's RFC, the ALJ considered plaintiff's allegations of the persistence and severity of his symptoms, but found them only partially consistent with the medical evidence of record. The ALJ acknowledged that plaintiff's diabetes was severe, requiring the amputation of two toes in January and May 2016. *Id.* at 21.

The ALJ concluded that plaintiff's allegations of functional limitations were undercut by the fact that he attended regular drug therapy appointments at the APT Foundation and reported to a counselor there that he "was engaged in meaningful daily activities including spending time with his children, working, attending outside meetings, and playing in his band at various locations." *Ibid.* In determining plaintiff's RFC, the ALJ found these reported activities to be highly probative, noting that "the claimant's admitted activities demonstrate he could perform light work despite his severe left foot impairment." *Ibid.*

At Step Four, the ALJ concluded that plaintiff was unable to perform any past relevant work. *Id.* at 23-24. At Step Five, the ALJ concluded that there are light work jobs that exist in the national economy that plaintiff can perform including as an assembler, an electronics worker, or a janitor. *Id.* at 25. In reaching this conclusion, the ALJ relied on the testimony of the Vocational Expert. *Ibid.* The ALJ ultimately held that plaintiff was not disabled within the meaning of the Social Security Act. *Ibid.*

4

# DISCUSSION

The Court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (*per curiam*). Absent a legal error, this Court must uphold the Commissioner's decision if it is supported by substantial evidence and even if this Court might have ruled differently had it considered the matter in the first instance. *See Eastman v. Barnhart*, 241 F. Supp. 2d 160, 168 (D. Conn. 2003).

Plaintiff argues that the ALJ failed to develop the record by failing to secure function-by-function opinion evidence from any of plaintiff's treating sources. The ALJ has a "duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (quoting *Butts v. Barnhart*, 388 F.3d 377, 386 (2d Cir. 2004). "This duty exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

In order to fully develop the record, a medical source statement is not necessarily required, so long as "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). Accordingly, the Second Circuit has concluded that an ALJ was not under an obligation to further develop the record where the record contained a partially relied-upon opinion from a consultative examiner and the treatment notes from the plaintiff's doctors. See *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013).

More recently, the Second Circuit rejected a challenge to the adequacy of the development of the record in a case where the ALJ disregarded the treating physician's opinion—the only treating source opinion—and made an RFC determination based in part on the treating source's notes that contained descriptions of the plaintiff's symptoms and contemporaneous medical assessments sufficient to assess plaintiff's ability to perform sustained gainful activity. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8–9 (2d Cir. 2017) ("Because the ALJ reached her RFC determination based on Dr. Wolkoff's contemporaneous treatment notes—while at the same time rejecting his post hoc medical opinion ostensibly based on the observations memorialized in those notes—that determination was adequately supported by more than a mere scintilla of evidence.").

As the ALJ noted here, the "key issue" was the extent to which plaintiff's left-foot condition limits his functional capacity. Doc. #15-3 at 21. I conclude there was a lack of adequately developed record evidence for the ALJ to make such an assessment and that the ALJ also overlooked aspects of the record that were of significance to the RFC determination.

The medical evidence from late 2015 to 2016 does not furnish a sufficient basis to make an RFC determination. The Commissioner acknowledges that the records from two key sources—the Connecticut Vascular Center and the Podiatry Group of New Haven—"are mostly illegible or provide sparse information." Doc. #28 at 9 n.4. Without meaningful evidence from these doctors, there are gaps in the record that the ALJ should have filled. *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 345 (E.D.N.Y. 2010) (finding "very significant gaps" in the record given the "complete absence" of contemporaneous medical evidence from treating physicians). Additional insight about plaintiff's functional capacity can be gleaned from the

treatment notes of the visiting nurse which cover from January 22, 2016 to June 23, 2016. Doc. #15-10 at 2–108.

Instead of relying on medical evidence from specialists treating plaintiff's foot condition during and after the amputation of his toes, the ALJ relied very heavily on reported statements made by plaintiff to opioid addiction counselors at the APT Foundation in early 2016 that plaintiff was "engaged in meaningful daily activities including spending time with his children, working, playing music, and attending outside meetings." Doc. # 15-8 at 178, 186.[1] But one of these reports dates from a visit on January 11, 2016, which was prior to plaintiff's first toe amputation, *id.* at 186, and the second report from April 5, 2016, was prior to the second toe amputation, and it further notes that "[p]atient reports overall health is not good [and] he states he has a []plethora[] of problem," and "[p]atient reports recent toe amputation and states he has another tow [sic] which is infected and not responding to antibiotics may have to have amputated." *Id.* at 178. Notes from a drug treatment counselor at the APT Foundation were a poor source of information about the status of plaintiff's left foot impairments and did not shed light on plaintiff's RFC as it existed after the amputation of both toes.

Although the ALJ made much of the fact that plaintiff played in a band, plaintiff's testimony was that he played with his band for only an hour or two once at a bar two months prior to the hearing and that he could not play several times a week. Doc. #15-3 at 45–46, 53. In the absence of medical evidence or medical source opinion evidence covering the period when plaintiff's physical condition significantly deteriorated, this was insufficient grounds to conclude that plaintiff was able to work.

---

[1] It is not clear from the record what constituted "working." There is no evidence of any "work" performed at the light exertional level.

At the hearing before the ALJ on July 28, 2016, plaintiff testified that he could barely walk and needed to use a cane that had been prescribed for him. *Id.* at 40, 50. The vocational expert admitted that "[i]f someone needed a cane to ambulate, then that would preclude work activity at the light exertional level." *Id.* at 61. Notwithstanding this testimony, however, the ALJ concluded that plaintiff's RFC permitted him to perform light duty work. *Id.* at 21. The ALJ's decision does not account for plaintiff's use of a medically prescribed cane.

"Light work" involves "a good deal of walking or standing," or "sitting most of the time with some pushing and pulling of arm or leg controls," as well as "lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567 and § 416.967. A claimant who requires a cane to balance or walk may be unable to engage in the type of lifting, carrying, or manipulation of objects that is required for light work. *See Clyburn v. Berryhill*, 2017 WL 6014452, at *4 (W.D.N.Y. 2017) (noting that "[l]ight work also requires the use of arms and hands to grasp and hold and turn objects," and "[i]f [claimant] needs to use a cane, it means that at least one hand is not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal") (internal quotation marks omitted); *Zidanich v. Colvin*, 2016 WL 6275233, at *4 (W.D.N.Y. 2016) (same). Moreover, the regulations make clear that use of cane may substantially impact a claimant's ability to perform even sedentary work, depending on the particular facts of the case. *See* SSR 96-9P, 1996 WL 362208 ("[T]he occupational base for an individual who must use [an assistive] device for balance because of significant involvement of both lower extremities . . . may be significantly eroded.").

Accordingly, I will remand this case for the ALJ to fully develop the record as to plaintiff's physical RFC especially with regard to his left foot condition and in light of plaintiff's

testimony that he requires a cane. Because I am remanding this case for failure to develop the administrative record, I need not consider plaintiff's remaining arguments, and these remaining arguments should be considered by the ALJ on remand.

## Conclusion

Plaintiff's motion to reverse the Commissioner's decision (Doc. #25) is GRANTED. The Commissioner's motion for judgment on the pleadings (Doc. #28) is DENIED. On remand, the ALJ shall fully develop the record as to plaintiff's physical residual functional capacity especially with regard to his left foot condition resulting from his type II diabetes. The ALJ shall also consider plaintiff's remaining arguments on remand.

It is so ordered.

Dated at New Haven this 10th day of January 2019.

                                                  /s/ *Jeffrey Alker Meyer*
                                                  Jeffrey Alker Meyer
                                                  United States District Judge